407 So.2d 702 (1981)
STATE of Louisiana
v.
Donald DAVIS.
No. 81-KA-1254.
Supreme Court of Louisiana.
December 14, 1981.
*704 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jack Rowley, Dist. Atty., Glenn E. Diaz, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
James W. Brodtman, of Law Office of Richard Tonry, Chalmette, for defendant-appellant.
BAGERT, Associate Justice Ad Hoc.[*]
On July 22nd, 1980, a bill of information was filed, charging defendant, Donald Davis, with the armed robbery of Glenn Cascio. A twelve-person jury found defendant guilty as charged on December 3rd, 1980. Defendant was sentenced by the trial court to a term of twenty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.
The facts surrounding the incident in question are as follows: On May 22nd, 1980, at about 7:30 P.M., Glenn Cascio drove to the house of a co-worker, Roland Majors, to discuss the purchase of a used motorcycle. When Cascio arrived at the Majors residence, it was necessary to turn his vehicle around to bring it closer to the motorcycle itself. Cascio drove to the end of the street and attempted to turn his vehicle around. At this point, a black male, brandishing a shotgun, emerged from the woods near the road. It was still light at this point, so Cascio was able to observe the robber closely. The man instructed Cascio to park the car and to get out; he reinforced his request with a shotgun jabbed into Cascio's ribs. Cascio surrendered all the money and other effects he had with him and then took advantage of a momentary distraction to make good his escape. He reported the crime to the police, and pursuant to an investigation thereof Donald Davis was arrested and charged with the robbery.
Assignments of Error 1 and 2.
The argument on the first and second assignments of error concerns the alleged impropriety of a pretrial photographic lineup identification by the victim and the error of permitting an in-court identification by the victim subsequent to such a lineup.
In the instant case, the victim, Cascio, was shown five photographs by two deputies of the St. Bernard Sheriff's Department. At the motion to suppress the evidence, Deputy Joseph Papania testified that he selected the five photographs and showed them to the victim on the night of the robbery. The defendant's photograph was chosen by Cascio as the photograph of the perpetrator of the crime. On cross examination, it was admitted by the deputy that the defendant's photograph was indeed markedly different from the others shown. While the other photographs shown were on ordinary glossy photographic stock, the defendant's photo was on ordinary paper stock and appeared to have been run through a photostatic copy machine. The latter photograph was obtained from the Bureau of Identification; the others were from the St. Bernard Parish Sheriff's Office.
Cascio identified the "odd" photo as that of the perpetrator and testified that it was indeed different from the other photos.
A lineup is considered unduly suggestive if the identification procedure displays the defendant so that the attention of the witness is unduly focused on the defendant. State v. Guillot, 353 So.2d 1005, (La.1977).
Identifying marks on the photograph must not single out the defendant. State v. Robinson, 386 So.2d 1374, (La.1980). It is improper for a lineup to have photographs all similar in size and shape, except *705 that of the chief suspect. State v. Williams, 341 So.2d 370, (La.1976).
However, even if the lineup procedure were itself suggestive, this does not automatically vitiate the identification by the witness. It is the likelihood of misidentification and not the suggestive lineup per se that is violative of due process. State v. Guillot, supra; Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, (1977), held that if the totality of the circumstances demonstrate conclusively the reliability of the identification, then the identification is admissible. Likewise, an in-court identification is considered untainted and admissible if there is a reliable source independent of the photographic identification. Manson established the factors to be considered in determining the reliability and existence of an independent source:
(1) Opportunity of witness to view the criminal at the moment of the crime;
(2) The degree of attention of the witness;
(3) Accuracy of prior description of the criminal;
(4) Level of certainty of the identification;
(5) Elapsed time between crime and confrontation.
Applying this analysis to the instant case, we find that the witness, Cascio, had ample opportunity to view the criminal at the moment of the crime. The robbery was during daylight hours, the perpetrator was next to the witness, and the entire incident lasted several minutes. The witness here was the victim and not a casual observer. His entire attention, attenuated because of the circumstances, was focused on the perpetrator. The witness gave a reasonably accurate description of the defendant; it corresponds largely with the lineup picture of the defendant. Further, Cascio gave a positive identification and viewed the photos on the same day as the crime.
It is apparent to this court that there was no substantial likelihood of misidentification. Therefore, the introduction of the out-of-court identification of the defendant did not violate Davis' due process rights. Further, it does not appear that the in-court identification of Davis had an impermissible taint attached to it.
These assignments are without merit.
Assignment of Error 3.
The defendant contends that the introduction of the 1973 "mug shot" of the defendant was prejudicial. It does indeed appear that the photograph shows defendant Davis with a plaque hanging around his neck; the plaque reads "Department of Louisiana" and gives a date "11-19-73". The admissibility into evidence of previous mug shots of defendants has been considered by this Court. The admission of such evidence should always be carefully considered, because there is a possibility that the jury could give undue weight to the inference that the defendant had been arrested or convicted previously.
In State v. Jones, 381 So.2d 416, (La. 1980), a mug shot of defendant was admitted into a prosecution for armed robbery. Because of the relevance of that photograph to the crucial issue of identification, and the high probative value of the identification of the photograph, this Court held that the evidence was properly admitted.
In State v. Curry, 390 So.2d 506, (La. 1980), this Court considered the admissibility of an old booking photograph. In Curry, the date of the photograph had been emphasized in redirect examination of a defense witness. This Court dismissed the defendant's contention that this mandated a mistrial, holding that an antedated photograph is not automatically inadmissible.
We, therefore, hold that C.Cr.P., Article 770(2), which mandates a mistrial if the district attorney or judge refers to another crime concerning which evidence is not admissible, does not require a reversal of the instant case. As in Curry and Jones, identification is a highly material issue, and the discrepancy in dates was not spelled out for the jury. "Unless the inference is plain that the prosecutor commented on other *706 crimes committed by defendant, Article 770 is inapplicable." State v. Curry, supra, at 509.
This assignment is without merit.
Assignments of Error 4 and 5.
Defendant contends in these assignments that the court erred in allowing Deputy Papania to testify that the victim was not a narcotics dealer and in denying the motion for mistrial after Papania corroborated this statement by mentioning a lie detector test given to the victim.
At the trial, the defense contended that the victim was a known narcotics dealer in the area and had been attempting to sell narcotics on the night of the incident in question. To rebut the argument, the prosecutor asked Deputy Papania if he could testify, of his own knowledge, whether Cascio was a narcotics dealer. An objection was duly made and overruled; the court found that the deputy could testify of his own knowledge. The initial statement of Deputy Papania was: "As far as I know, Mr. Cascio's name has never come up in any of our investigations in that area."
This answer of the witness is not inadmissible (or objectionable) since the witness testified from his own (admittedly extensive) experience in the area. However, the prosecutor, dissatisfied with leaving well enough alone, again asked: "Is Mr. Cascio a narcotics pusher?" An objection was once again made, and the court directed the prosecutor to rephrase his question. The district attorney, fully aware that Cascio had undergone a lie detector test prior to the trial, knew that Papania had some basis for an answer. Papania answered that Cascio was not a narcotics dealer.
On cross examination, defense naturally attempted to discover some basis for Deputy Papania's opinion. In the course of said cross examination, Papania testified that he had given Cascio a lie detector test.
The results of a lie detector test remain inadmissible in Louisiana when offered by either party, either as substantive evidence or as relating to the credibility of a party or witness. State v. Catanese, 368 So.2d 975, (La.1979). To admit such test results usurps the jury's prerogative on a question involving credibility. State v. Vinet, 352 So.2d 684, (La.1977). The essential reason to prohibit such evidence is the lack of probative value and insufficient scientific reliability, as well as the possible unduly prejudicial effect on lay triers of fact. State v. Refuge, 270 So.2d 842, (La.1974).
Louisiana Code of Criminal Procedure, Article 771, requires the court to admonish the jury "to disregard a remark or comment made during trial when the remark is irrelevant, or immaterial, and of such a nature that it might create prejudice against the defendant or the state, in the mind of the jury." However, if the court is convinced that an admonition is not sufficient to assure the defendant of a fair trial, then the proper remedy is to grant a motion for a mistrial.
The motion for a mistrial was timely made and denied. Afterwards, the court admonished the jury to disregard "any testimony in your deliberations relative to a lie detector test."
It is the holding of this Court that the admonition given in the case was insufficient. The blanket statement by the deputy that Cascio was not a narcotics dealer was in and of itself improper on its face. But by placing before the jury the fact that Cascio had taken a lie detector test and had, by inference, testified truthfully, reversible error was unquestionably created. The inference that Cascio is testifying truthfully at trial is unavoidable. Furthermore, the testimony of Papania as to Cascio's status as a narcotics dealer was based largely on this test. Therefore, it represents a substantial evasion of the prohibition against lie detector testimony.
Reversed and remanded for a new trial consistent with the provisions of this opinion.
MARCUS, J., and GARRISON, J., ad hoc, dissent.
BLANCHE, J., dissents and will hand down reasons.
NOTES
[*] Judges James C. Gulotta and Jim Garrison of the Fourth Circuit Court of Appeal and Judge Bernard J. Bagert, Sr. of the Criminal District Court for the Parish of Orleans participated in this decision as Associate Justices Ad Hoc, joined in by Chief Justice John A. Dixon, Jr. and Associate Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., and Fred A. Blanche.