EDWARDS, Judge.
Clarence E. Fournier, was charged by bill of information with aggravated burglary, in violation of LSA-R.S. 14:60. He was tried and found guilty by a twelve-person jury, and sentenced to a prison term of thirty years, to run consecutively with any other sentence he was serving. The trial court also suspended a six-month parish jail sentence on defendant during trial for contempt of court. Defendant has appealed, alleging nine assignments of error.
On April 5, 1983, sixteen-year-old Cathy Duncan was taking care of Gina Paredes’ two small children at Mrs. Paredes’ home. While watching television with the children, Miss Duncan heard the back door open and then saw defendant standing in the den, with a pistol and police identification in his hands. Saying he was with the police de *966 partment, he grabbed her arm and told her to take him to the master bedroom. She complied. In the master bedroom, he found a safe and called out to one of his two accomplices to come and help him remove it. One of the perpetrators rolled the safe out to the back door.
Meanwhile one of Mrs. Paredes’ daughters telephoned her mother, who was next door working at Big J Marine. Her employer, Walter Carline, drove her home, and, upon arriving, they noticed a grey automobile, with its trunk opened, backed into the driveway. She got out of the car and was met by an accomplice who, while shielding his face from her view, said he was looking for someone. Another accomplice went to Mr. Carline, who had remained in the car, and told him not to block the driveway because that would interfere with police business. Mrs. Paredes ran to her back door, but her entrance was blocked by the safe. Defendant, who was inside the house, grabbed her arm, as if trying to pull her inside. She screamed for Mr. Carline to call the police, and the perpetrators fled in the grey car. Shortly thereafter, defendant and two other men were apprehended, and the grey car was recovered.
ASSIGNMENTS OF ERROR NUMBERS 1-4:
Defendant argues the trial court erred by allowing certain items to be admitted into evidence.
THE SMITH AND WESSON REVOLVER
Defendant claims that the State failed to lay a proper foundation for the admission of the revolver into evidence, in particular, that the State failed to establish an adequate chain of custody.
The Louisiana Supreme Court has set the standard for admissibility of demonstrative evidence:
To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient, [citations omitted]
The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury, [citations omitted]
State v. Brown, 337 So.2d 484, 485 (La.1976) (quoting State v. Dotson, 260 La. 471, 256 So.2d 594, 608 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972)). See also State v. Robertson, 441 So.2d 1281,1285 (La.App. 1st Cir.1983), cert. denied, 446 So.2d 314 (La.1984); State v. Joseph, 441 So.2d 1290, 1293 (La.App. 1st Cir.1983), cert. denied, 446 So.2d 315 (La.1984).
Detective Engolio testified that he personally recovered the revolver, tagged it and turned it over to the crime lab. He identified the revolver as the same one he had recovered. We find that the testimony of Detective Engolio is sufficient showing that the revolver introduced as evidence was the revolver recovered when defendant was apprehended, and that it was kept by the Louisiana State Crime Lab until the trial.
ITEMS TAKEN FROM THE GREY AUTOMOBILE
The grey automobile was impounded on April 5, 1983 and kept at the Iberville Parish Sheriff’s office. On May 18, 1983, Detectives Engolio and Blanchard executed a search warrant, and recovered numerous items, including a guard uniform, police identification, a police scanner, a pistol and *967 holster, a microphone, three antennas, and a red emergency light. The trial court allowed all of the items except the pistol and holster into evidence.
Defendant argues that the State failed to show that no one tampered with the automobile during the time between the arrest and search, and that no adequate reason was given to explain why the detectives waited so long after the arrest to obtain a search warrant and to search the automobile.
We find no merit in this argument. Detective Blanchard testified that the automobile had been stored and locked on the back lot of the parish jail since the day of the crime. The reason for the delay in procuring the search warrant was that both detectives thought the other was going to get a warrant.
The questions raised by defendant concern matters going to the weight of the demonstrative evidence, rather than to its admissibility. See State v. Robertson, 441 So.2d at 1285. The jury determined for itself whether the items recovered in the automobile were used in the crime or were planted there by an unknown party.
PHOTOGRAPHS
Defendant claims that the trial court erred in admitting three photographs of the suspect into evidence. He argues that the State failed to lay a proper foundation for their introduction, and that the photographs lack probative value.
Photographs are generally “admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and when they tend to shed light upon the matter before the court.” State v. Leggett, 363 So.2d 434, 439 (La.1978) (citations omitted); State v. Robertson, 358 So.2d 931 (La.1978) (citations omitted). “A proper foundation for admission in evidence of a photograph is laid when witnesses having personal knowledge of the item or incident depicted by the photograph, identify it.” State v. Leggett, 363 So.2d at 439. The trial court has discretion in determining whether the identification of a photograph is sufficient for purposes of admissibility. State v. Robertson, 358 So.2d at 940 (citations omitted).
Defendant contends that the proper foundation had not been established because of conflicting testimony concerning who took the photographs. Detective Engolio thought a jailer took the photographs; Detective Blanchard said that he personally took them. The finder of fact, trial judge or jury, should assess the credibility of witnesses to determine the most credible and realistic evidence; and, in reaching conclusions, “[t]he trier of fact may accept or reject, in whole or in part, the testimony of any witness.” State v. Norman, 448 So.2d 246, 248-49 (La.App. 1st Cir.), rev’d in part on other grounds, 45 So.2d 1178 (La.1984) (citing Holmes v. Southeastern Fidelity Insurance Co., 422 So.2d 1200, 1203-04 (La.App. 1st Cir.1982), cert. denied, 429 So.2d 133 (La.1983)).
Both detectives positively identified the photographs. Their identifications are not suspect simply because Detective Engolio did not know Detective Blanchard personally took the photographs. The trial court’s evaluation of their testimony was not clearly wrong, and therefore will not be disturbed. See Holmes v. Southeastern Fidelity Insurance Co., 422 So.2d at 1204 (citations omitted).
Defendant’s argument that the State failed to present evidence that the photographs fairly represented defendant on the day they were taken is likewise unfounded. On direct examination by the State, Blanchard testified that the photographs were taken shortly after the arrest. On cross-examination he testified that he made defendant change from a prison jump suit to his street clothes for the photograph. This testimony indicates that he remembered taking the photographs of defendant wearing the same clothes he wore on the day of his arrest.
The photographs were accurately taken and were a correct representation of the defendant on the day of the crime. The *968 photographs tend to shed light on the subject, and have probative value; the description of defendant and his clothes by the victims of the crime matches that shown in the photographs. And the photographs were identified by one who investigated the crime as well by the person who took them.
These assignments of error lack merit.
ASSIGNMENTS OF ERROR NUMBERS 5, 7, and 8:
While under cross-examination, Detective Blanchard testified that while he was driving defendant from the Jefferson Parish Jail to Iberville Parish Jail, defendant told him he intended to plead guilty. Defendant objected; the trial court sustained the objection and admonished the jury to disregard the statement. The trial court was correct in so doing. See LSA-C.Cr.P. art. 771.
Defendant argues that the trial court erred when it did not grant his motion for mistrial based on Detective Engolio’s statement, given under cross-examination, that defendant robbed the Paredes household. Since he was charged with aggravated burglary, defendant claims Detective Engolio’s mention of another crime made it mandatory, under article 770 of the Code of Criminal Procedure, for the trial court to grant a mistrial.
A police officer is not a “court official” for the purposes of article 770; therefore, a granting of a mistrial could not have been mandatory. See State v. Kennedy, 444 So.2d 301, 305-06 (La.App. 1st Cir. 1983); cert. denied, 446 So.2d 1228 (La. 1984). A prejudicial remark made by a policeman should be viewed with considerable concern as to the fairness of the trial and may require a mistrial, but the necessity of granting a mistrial is left to the sound discretion of the trial court. State v. Douglas, 389 So.2d 1263, 1266 (La.1980); State v. Kennedy, 444 So.2d at 306; State v. Montgomery, 432 So.2d 340, 344 (La.App. 1st Cir.1983).
We find no abuse of discretion. The trial court noted that the robbery mentioned by Detective Engolio was in reference to the specific incident for which defendant was charged. The detective was simply using a word to describe defendant’s attempt to take the safe from Mrs. Paredes’ home. The trial court was convinced the jury understood that Detective Engolio was referring only to the crime with which defendant was charged.
The trial court admonished the jury that defendant was only on trial for aggravated burglary. Under the circumstances, that was sufficient.'
These assignments of error have no merit.
ASSIGNMENT OF ERROR NUMBER 6:
Defendant claims that the reading by Detective Engolio of a lineup form used by the Iberville Parish Sheriff’s Office, which shows that Walter Carline picked defendant out of a lineup, is hearsay testimony. There was no objection made by defendant at trial, but he argues that, since he represented himself, he should not be held accountable for not having done so.
An accused has the right to defend himself, U.S.Const., amend. 6; LSA-C. Cr.P. art. 511, and that right includes the right of self-representation. Faretta v. California, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975); State v. Booker, 444 So.2d 238, 241 (La.App. 1st Cir.1983) cert. denied, 446 So.2d 1227 (La. 1984). The Faretta court noted, however, in dicta, that the right of self-representation does not amount to “a license not to comply with relevant rules of procedural and substantive law.” Faretta, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541 n. 46.
Defendant adamantly refused representation by the court appointed attorney. Yet the court required the attorney to sit with defendant during the trial so that he would be available to give defendant advice. Furthermore, the court was helpful to defendant and very cautious in its rulings. Nevertheless, the rules of procedure are not suspended by a defendant’s decision to represent himself. Defendant did not object to the testimony at trial and therefore he cannot argue on ap *969 peal that the court erred in allowing it. See LSA-C.Cr.P. art. 841.
Furthermore, even if we were to conclude that the court erred in this respect, we would hold the error harmless. Mrs. Parades and Miss Duncan, the two' witnesses who had seen the perpetrator face to face, positively identified defendant. Mr. Carline had seen the perpetrator from a distance and only for a very short time, and his identification of defendant was less than positive. Thus it is evident that the State established defendant’s identification by the testimony of the two people most able to make such an identification. The establishment of defendant as the perpetrator was not dependent on Mr. Carline’s identification. See State v. Phagans, 412 So.2d 580, 583-84 (La.1982).
ASSIGNMENT OF ERROR NUMBER 9:
Defendant argues that the jury’s guilty verdict is contrary to the law and evidence. A reviewing court must view the evidence in the light most favorable to the prosecution, LSA-C.Cr.P. art. 821, and then determine whether any rational trier of fact could have found that the essential elements of the crime of aggravated burglary were proved beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979).
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
LSA-R.S. 14:60.
The testimony is unequivocal that defendant was not authorized by Mrs. Paredes, Cathy Duncan, or anyone else to enter the inhabited home of Mrs. Paredes. Cathy Duncan testified that defendant directly participated in the attempt to take the safe from Mrs. Paredes’ house, and defendant’s intent to commit a theft can be inferred from his direct participation. LSA-R.S. 15:445. She also testified, positively, that defendant had a gun while in the dwelling, and that he grabbed her arm. Hence the aggravating element is clearly present. See LSA-R.S. 14:60(1), (3). A rational jury could have found that the State proved all the elements of aggravated, burglary beyond a reasonable doubt.
For the foregoing reasons, defendant’s conviction is affirmed.
AFFIRMED.